UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VINCENT BRYANT, et al.,

              Plaintiffs,

      v.

CITY OF BERKELEY, et al.,

              Defendants.

Case No. 21-cv-08169-AGT

**ORDER ON DEFENDANTS'
SUMMARY JUDGMENT MOTION**

Re: Dkt. No. 101

This case arises out of law enforcement activity that took place on January 2, 2021,[1]

when City of Berkeley police responded to a call for assistance after plaintiff Vincent Bryant

left a Walgreens store wielding a chain. A team of officers were dispatched to the scene and

encountered Bryant, who was visibly and verbally agitated. Bryant was shot during the in-

teraction and this lawsuit followed. Bryant asserted violations of the Fourth Amendment,

Title II of the Americans with Disabilities Act (ADA), supervisory liability, and a number

of state law claims. Dkt. 43. Defendants City of Berkeley, Officer Madison Albrandt, Ser-

geant Samantha Speelman, and Sergeant Kevin Kleppe (collectively, Defendants) move for

summary judgment on all claims. Dkt. 101. For the reasons that follow, the Court grants

---

[1] Bryant's first amended complaint lists the date of the events in question as January 21, 2021. Dkt. 43 § 1. In Defendants' amended summary judgment motion, dkt. 101 at 11, and Bryant's opposition to summary judgment, dkt. 103 at 5, the date is listed as January 2, 2021. This mix-up also occurred in depositions, where Sergeant Kleppe clarified that the correct date is January 2, 2021. Kleppe Dep. 8:1–11. *See also* Albrandt Dep. 6:13–17.

judgment in favor of Defendants on Bryant's federal claims only and declines to exercise jurisdiction over his state law claims.

## I.    Bryant's Condition

As an initial matter, for reasons unrelated to this lawsuit, Bryant was found unresponsive in March of 2023. Dkt. 101 at 15 n.4;[2] Antonia Bryant Dep. 55:2–56:19.[3] He remained in a vegetative state as of the filing of this motion. Dkt. 101 at 15 n.4[4] The Court previously appointed Bryant's mother, Antonia Bryant, guardian ad litem. Dkt. 78. Bryant was not deposed prior to becoming unresponsive and apparently is unable to testify live or otherwise at trial. *See* dkt. 68 (stipulation and order regarding Bryant's lack of competence to testify). Instead, the Court relies in large part on recorded footage captured by officers' body worn cameras (BWC) and testimony from the officers, which is the only eyewitness testimony offered by the parties.

The record is still viewed in the light most favorable to the nonmovant, Bryant here, "so long as [his] version of the facts is not blatantly contradicted by the video evidence." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). Nor does the "mere existence of video footage . . . foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage." *Id.* Instead, the Court "must carefully examine the evidence in the record to determine whether the officers' testimony is internally

---

[2] References to page numbers in this order correspond to the Electronic Case Filing paginations at the top of each page.

[3] Citations to deposition transcripts are page:line.

[4] Defendants originally moved for summary judgment, arguing that Bryant was "brain dead" pursuant to California law. Dkt. 92 at 16. Bryant argued in opposition that his condition did not preclude his claims. Dkt. 94 at 15–16. The Court ordered further inquiry into Bryant's status. Dkt. 99. In response, in their amended motion, Defendants withdraw that argument. Dkt. 101 at 15 n.4. The parties therefore agree Bryant's claims may proceed to summary judgment.

consistent and consistent with other known facts." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 791 (9th Cir. 2014) (en banc).

##       II.     Factual Background

Relevant here, on the evening of January 2, 2021, after Bryant left a Walgreens on Shattuck Avenue, a Walgreens employee called the police to report that Bryant had stolen from the store and threatened him with a chain. Dkt. 103 (opposition) at 5; Huynh Dep. 15:11–24 & 16:17–22; Kleppe Dep. 31:4–7. The chain is visible on video and was described in the submitted testimony as between six and thirteen feet long, Huynh Dep. 15:18–25 & Albrandt Dep. 127:17–21, "large," Kleppe Dep. 31:5–6, and "thick." Albrandt Dep. 127:17–21.[5] The store employee additionally reported that Bryant was experiencing mental health-related symptoms and referenced a "5150."[6] Dkt. 103 at 5; Huynh Dep. 17:4–14; Albrandt Dep. 82:8–17; Kleppe Dep. 31:4–19.

Bryant walked from Walgreens into the courtyard of U.C. Berkeley's Tang Center. Dkt. 103 at 5. Police surrounded him there. *Id.* at 6; Gibson BWC 00:00–01:30. Bryant yelled "shoot" repeatedly and threatened to "take every single one" of the police "out," among other similar comments, while walking the courtyard and holding the chain. Dkt. 103 at 6–7; Gibson BWC 00:30–03:39. As shown and heard in the BWC clips, officers repeatedly asked him to drop the chain or otherwise tried to engage Bryant. Gibson BWC 00:30–03:39.

After several minutes, Sergeant Speelman arrived on scene and engaged with Bryant. Dkt. 103 at 7; Gibson BWC 05:35–45. Sergeant Speelman is a trained negotiator, Speelman

---

[5] Bryant presents no evidence to the contrary, characterizing it only as a "bike chain" in his opposition. Dkt. 103 at 5.
[6] California Welfare & Institutions Code § 5150 allows for the temporary hold of certain persons posing a danger to themselves or others, or exhibiting grave disability.

Dep. 27:18–22, and she first asked Bryant to sit down and talk. Gibson BWC 05:38–45. Bryant responded in part, "only if you see what I see right now." *Id.* 05:46–51. Bryant continued to ask Sergeant Speelman to describe a picture that he was seeing, saying that if she did, he would drop his chain. Dkt. 103 at 7; Gibson BWC 06:14–23. Among other statements, Bryant told Sergeant Speelman that "women are okay," that "men who play cowards" will be "sent to the planet of [their] choice," and that the men who "show they deserve a second chance" will get to stay on planet Earth. Dkt. 103 at 7; Gibson BWC 07:00–16. He was no longer striking his chain on the ground. Dkt. 103 at 7; Gibson BWC 05:36–12:23.

After about five and a half minutes, Sergeant Speelman withdrew. Dkt. 103 at 7–8; Gibson BWC 12:35. Sergeant Speelman testified that she felt that she had "exhausted [her] options as far as negotiating with him." Speelman Dep. 44:4–9.

Shortly after Sergeant Speelman left the immediate scene and ceased verbal contact with Bryant, dkt. 103 at 8; Gibson BWC 13:09–11, a contact team[7] entered the courtyard with weapons drawn and ordered Bryant to drop the chain while moving towards him. Dkt. 103 at 8; Huynh BWC 02:50–56; Navarro BWC 11:19–21. Sergeant Huynh, leading the contact team, warned Bryant that if Bryant did not drop the chain, he would "get hit with less lethal." Huynh BWC 02:57–59; Navarro BWC 11:20–24. Bryant turned to look at the contact team entering the courtyard and then moved toward the contact team. Dkt. 103 at 8; Huynh BWC 02:56–58; Albrandt BWC 11:37–43.

Two non-lethal shots are audible in the videos, followed "at the same time as or

---

[7] According to Defendants, "[t]he purpose of the Contact Team was to make contact with [Bryant] to take him into custody . . . ." Dkt. 101 at 13. Bryant defines the contact team as, "a group of five [Berkeley Police Department] Officers gathered approximately thirty (30) feet from [Bryant], behind one of the Tang Center Courtyard's eastside buildings and hidden from [him] . . . ." Dkt. 103 at 8.

immediately after," dkt. 103 at 8, by a third lethal shot which hit Bryant in the face. Dkt. 103

at 8 & 10; Huynh BWC 02:58–03:02; Albrandt BWC 11:40–42. Officer Albrandt fired the

lethal shot. *E.g.*, Albrandt Dep. 66:19–67:9 & 86:6–10. *See also* dkt. 103 at 8. After he was

shot, Bryant fell to the ground and cried out in pain. Dkt. 103 at 8; Navarro BWC 11:25–36.

Officers surrounded and arrested Bryant. Dkt. 103 at 10; Huynh BWC 03:02–12.

### III.    Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable

jury could return a verdict for the nonmoving party," and a fact is material only if it might

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When deciding a motion for summary judgment, the court must draw "all justifiable infer-

ences" in the nonmoving party's favor and may not weigh evidence or make credibility de-

terminations. *Id.* at 255.

### IV.    Fourth Amendment

Bryant maintains that Officer Albrandt, Sergeant Kleppe, and Sergeant Speelman

used excessive force in violation of the Fourth Amendment when they shot him. Dkt. 43

¶¶ 35–38.[8] Defendants move for summary judgment, arguing that the use of force was rea-

sonable, and that Officer Albrandt, Sergeant Kleppe, and Sergeant Speelman are entitled to

qualified immunity. Dkt. 101 at 17–28.

In determining whether summary judgment is appropriate in this context, the Court

---

[8] Bryant brings this claim, predicated on the shooting, against all three defendant officers. There is no dispute Officer Albrandt fired the shot that hit Bryant. Dkt. 101 (motion) at 15; dkt. 103 (opposition) at 8.

reviews whether Defendants' use of force was objectively reasonable, *see Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 914–22 (9th Cir. 2024), and whether Defendants violated clearly established law. *See Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 802–04 (9th Cir. 2025) (en banc). If they did not violate clearly established law, Defendants would be entitled to qualified immunity even if the force were unreasonable. *Id.* at 802. The Court may address these prongs in either order, *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1137 (9th Cir. 2025), and need not address both prongs. *O'Doan v. Sanford*, 991 F.3d 1027, 1036 (9th Cir. 2021) (noting that courts "may exercise . . . discretion to resolve a case only on the second ground when no clearly established law shows that the officers' conduct was unconstitutional").

"[A]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [her] shoes would have understood that [she] was violating it." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (cleaned up). A case directly on point is not required. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Instead, "existing precedent must have placed the statutory or constitutional question beyond debate," *id.,* and "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024).

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). *See also Hopson v. Alexander*, 71 F.4th 692, 698 (9th Cir. 2023) ("Plaintiffs asserting excessive force claims must thus point to an existing rule that 'squarely governs' the facts at issue . . . .") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).

Arguing against qualified immunity, Bryant writes that he had a clearly established

right "to be free from the lethal force" employed against him on January 2, 2021. Dkt. 103

at 19. To demonstrate this clearly established right, he points first to *Deorle v. Rutherford*,

272 F.3d 1272 (9th Cir. 2001). Dkt. 103 at 19–20. In *Deorle*, the Ninth Circuit held that,

"[e]very police officer should know that it is objectively unreasonable to shoot — even with

lead shot wrapped in a cloth case — an unarmed man who: has committed no serious offense,

is mentally or emotionally disturbed, has been given no warning of the imminent use of such

a significant degree of force, poses no risk of flight, and presents no objectively reasonable

threat to the safety of the officer or other individuals." *Id.* at 1285. The Circuit also noted

that Deorle had complied with instructions, discarded his potential weapons when asked to

do so, and that a team of negotiators was on the way but had not yet arrived. *Id.*

*Deorle* is easily distinguishable. Here, there is no dispute that Bryant was armed with

a chain throughout the encounter, including at the moment he was shot. Dkt. 101 at 14–15;

dkt. 103 at 6–8; Huynh BWC 02:56–58; Albrandt BWC 11:37–43. There can be no dispute

that Bryant was suspected of a serious offense: the parties agree that the Walgreens cashier

called 911 to report that Bryant stolen items and threatened him (the cashier) with a chain.

Dkt. 101 at 16; dkt. 103 at 5. It is undisputed that Bryant was warned: Sergeant Huynh can

be heard yelling warnings in the BWC videos. Huynh BWC 2:50–59; Navarro BWC 11:19–

24.[9] Finally, there is no dispute that Bryant failed to comply with repeated instructions to

---

[9] In *Deorle*, the officer gave no warning prior to shooting a beanbag round. *See* 272 F.3d at 1278 & 1285. Bryant notes that Officer Albrandt did not warn him prior to firing a lethal shot, dkt. 103 at 9, but Sergeant Huynh yelled, "drop the chain, drop the chain, here's your warning, drop the chain, you're going to get hit with less lethal" immediately prior to any shots (lethal or not) ringing out. Navarro BWC 11:18–24; Huynh BWC 2:54–59; Albrandt BWC 11:35–40. *Deorle* thus does not "squarely govern[ ]," *Hopson*, 71 F.4th at 698, these facts.

drop his chain, refused to discard the chain, and that Sergeant Speelman, a trained negotiator, had already attempted to engage with Bryant.[10] These facts are not close to *Deorle;* therefore, *Deorle* does not "squarely govern[ ]," *Hopson*, 71 F.4th at 698, Bryant's claim.

Bryant relies next on *Vos v. City of Newport Beach*, wherein the Ninth Circuit found that a deadly police shooting of a man who did not pose an immediate threat to the officers or public, and had not been accused of any crime, was unreasonable. 892 F.3d 1024, 1031–34 (9th Cir. 2018); dkt. 103 at 20. But *Vos* does not make these Defendants in violation of a clearly established right. As noted, Bryant was accused of robbing a store and threatening its cashier with a chain, and he was noncompliant with officers' repeated orders to drop the chain. Finally, Bryant advanced towards the contact team as they entered the courtyard, still holding his chain after commands to drop the chain. Huynh BWC 02:56–58; Albrandt BWC 11:37–43. *See also* dkt. 103 (opposition) at 8 ("When [Bryant] saw the Contact Team charging towards him with their guns drawn, he[,] . . . with chain in hand, moved towards the Contact Team . . . ."). Whereas in *Vos*, the officers were protected by their police cars, *Vos*, 892 F.3d at 1032, these officers had no barrier. In light of these differences in fact, *Vos* cannot be a basis to deny qualified immunity to Defendants.

Bryant next cites to *S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019). Dkt. 103 at 20. There, an officer arrived on scene, saw the unarmed[11] suspect stumbling forward, and within seconds — without identifying himself or giving any sort of warning — shot the suspect. *Nehad*, 929 F.3d at 1131 & 1141. Again, here, it is undisputed that Bryant was

---

[10] There is a dispute as to the success of those efforts, *see* dkt. 101 at 13 & dkt. 103 at 12, but that dispute is not material to qualified immunity.
[11] In *Nehad*, "the officer later changed his story to the effect that he thought Nehad had been carrying a knife, [but] this testimony was disputed, even by his own earlier statements." *Hart v. City of Redwood City*, 99 F.4th 543, 556 (9th Cir. 2024).

armed with a chain, refused repeated requests to drop the chain, and received multiple warnings from officers. Additionally, Defendants engaged with Bryant for over ten minutes and approximately six minutes were spearheaded by Sergeant Speelman, a trained negotiator. On these facts, *Nehad* is distinct and does not place the questions of this case "beyond debate." *al-Kidd*, 563 U.S. at 741.

Bryant finally cites to *Estate of Crawley v. Kings County* for the proposition that, "it was clearly established that officers who intentionally or recklessly provoke a violent response are liable for the use of excessive force in violation of the Fourth Amendment." No. 13-CV-02042, 2014 WL 2174848, at *6 (E.D. Cal. May 23, 2014), *report and recommendation adopted*, No. 13-CV-02042, 2014 WL 2801046 (E.D. Cal. June 19, 2014); dkt. 103 at 20. This, however, is no longer good law. After *Estate of Crawley* was decided — and prior to the events at issue in this case — the Supreme Court abrogated the line of cases that *Estate of Crawley* relied upon. *See Cnty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 426–31 (2017) ("The provocation rule . . . is incompatible with our excessive force jurisprudence."); *see also Elliott v. Mason Cnty.*, No. 17-CV-6067, 2018 WL 6199002, at *8 (W.D. Wash. Nov. 28, 2018) (noting that *Estate of Crawley* does not serve to clearly establish a right as its "theory of liability was expressly overruled by the U.S. Supreme Court"). As such, *Estate of Crawley* does not serve to clearly establish a right. *See Napouk,* 123 F.4th at 922 (noting that "clearly establishing a right usually requires controlling authority or a robust consensus of cases of persuasive authority").[12]

---

[12] The Court recognizes that *Estate of Crowley* is an unpublished finding and recommendation, not an order, from a different district court. As such, even if good law, it would not clearly establish the law in this case. *See Spencer v. Pew,* 117 F.4th 1130, 1142 n.6 (9th Cir. 2024) ("[D]istrict court decisions are insufficient to create a clearly established right.") (cleaned up).

Accordingly, Bryant has failed to identify a case in which an officer acting in similar circumstances was found to have violated the Fourth Amendment. Since "no clearly established law shows that the officers' conduct was unconstitutional," *O'Doan*, 991 F.3d at 1036, qualified immunity bars Bryant's Fourth Amendment claims. Defendants are entitled to summary judgment.[13]

### V.    Supervisory Liability

Under § 1983,[14] a supervisory official is not liable for the actions of her subordinates on any theory of vicarious liability. *See, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A supervisor may be liable for a subordinate's constitutional violation only if there is either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

A sufficient causal connection requires that the supervisor either set in motion or knowingly refused to terminate acts by others which she knew or had reason to know inflict constitutional injury. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if [she] participated in or directed the violations, or knew of the violations and failed to act to prevent them.").

Bryant brings this claim against Sergeants Kleppe and Speelman. Dkt. 43 ¶¶ 62–64. Defendants argue that supervisory liability is unavailable here. Dkt. 101 at 31. Bryant

---

[13] Bryant points in opposition to three disputed facts. *See* dkt. 103 at 11–13. None of these are material to the qualified immunity analysis. As such, they do not preclude the grant of summary judgment on his claim.

[14] In the complaint, Bryant does not allege a § 1983 supervisory liability claim. *See* dkt. 43. However, in opposition to summary judgment he appears to do so. *See* dkt. 103 at 25. The Court therefore construes his claim as a § 1983 claim for supervisory liability.

responds that, "[t]here is a 'sufficient causal connection' between Sgt. Kleppe's order to Sgt. Speelman to stop engaging with [Bryant], Sgt. Speelman's decision to stop engaging with [Bryant], Sgt. Kleppe's order to the Contact Team to confront [Bryant], and the Contact Team's charging and shooting of [Bryant] to support supervisory liability against Sgt. Kleppe and Sgt. Speelman." Dkt. 103 at 25.

First, there is no evidence in the record, and Bryant does not cite to any, that Sergeant Kleppe ordered Sergeant Speelman to stop negotiating with Bryant. To the contrary, Sergeant Speelman testified that she "had kind of exhausted [her] options as far as negotiating with [Bryant]," Speelman Dep. 44:4–5, and that she "felt [she] had come to an end of being able to conversate with [Bryant]." *Id.* 46:21–23. Sergeant Speelman continued that she "stepp[ed] back to talk to Seargeant Kleppe and [said] something along the lines of that [Bryant] wasn't listening, things weren't moving forward." *Id.* 49:10–13. Sergeant Kleppe similarly testified that he consulted with Sergeant Speelman, and she informed him that the "negotiations were not working." Kleppe Dep. 58:16–24. Bryant's mere assertion, without any citation to the record, that Sergeant Kleppe ordered Sergeant Speelman to end negotiations cannot defeat summary judgment on supervisory liability. *See Foster v. City of Indio*, 908 F.3d 1204, 1217–18 (9th Cir. 2018) (per curiam) (noting that, a "bare allegation alone, without any evidence in the record" cannot support a denial of summary judgment) (emphasis omitted).

Next, Sergeant Speelman's decision to cease negotiating with Bryant does not constitute an unconstitutional use of force. She attempted to deescalate the situation with Bryant, which in her opinion was not successful, and so she stopped negotiating with Bryant. Sergeant Speelman's actions were separate and distinct from those of the contact team that shot

Bryant. Bryant cites to no evidence to show that Sergeant Speelman "participated in or directed" the alleged violations, or knew of the alleged violations and failed to act to prevent them. *List*, 880 F.2d at 1045. He cannot defeat summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Id. See also Herrera v. City of Fremont*, No. 18-CV-02843, 2019 WL 5963231, at \*13 (N.D. Cal. Nov. 13, 2019) (granting summary judgment where a plaintiff failed to "identif[y] any evidence that would support a finding that [the defendant] was personally involved in or had any causal connection to the constitutional violations alleged").

Finally, Sergeant Kleppe and Sergeant Speelman are entitled to qualified immunity for the same reasons that the Officer Albrandt is: Bryant has not identified or cited to any authority which shows that Sergeants Kleppe or Speelman knew they were violating a clearly established right.

For the above reasons, supervisory liability is not applicable here.

## VI.    Title II of the ADA

To benefit from Title II of the ADA, a plaintiff must first show that he "is an individual with a disability." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds, City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015). *See also* 42 U.S.C. § 12132 ("no qualified individual with a disability shall . . . "). In order to show that he is an "individual with a disability", Bryant must establish that he experiences "(A) a physical or mental impairment that substantially limits one or more of the major life activities[;] . . . (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C).

Bringing this claim against City of Berkeley only, Bryant alleges in his complaint

that he was disabled at the time of the incident due to mental illness. Dkt. 43 ¶¶ 51–54. He

further alleges in opposition that he was disabled due to "clear mental health issues." Dkt.

103 at 21. Nowhere does Bryant cite to any facts or anything in the record to prove that he

was an individual with a disability as defined in the ADA.[15] *Cf. Hyer v. City & Cnty. of

Honolulu*, 118 F.4th 1044 (9th Cir. 2024) (finding summary judgment inappropriate on an

ADA claim where the plaintiff submitted an expert report from "a forensic psychiatrist opin-

ing on [the decedent's] disability and mental state at the time of the incident"). He does not

allege any limitations on major life activities, or have records of such impairments. *Cf. Som-

mers v. City of Santa Clara*, 516 F. Supp. 3d 967, 989 (N.D. Cal. 2021) (denying summary

judgment on ADA claim where plaintiff submitted declarations detailing treatment sought

and explaining limits on major life activities).[16]

Bryant, citing *Vos*, argues that accommodation of his mental health concerns was

possible, and Defendants failed to do offer it. Dkt. 103 at 21. He is skipping an important

step. To show that accommodations were required, Bryant must first show that he had a

disability which required accommodating. This he has failed to do. Bryant cannot defeat

summary judgment on this claim with mere allegations or conclusions. *See Foster*, 908 F.3d

at 1217–18 (a "bare allegation alone, without any evidence in the record" cannot support a

denial of summary judgment) (emphasis omitted).

/ / /

---

[15] At the hearing, Bryant argued that the Walgreens cashier's report of a § 5150 should have put Defendants on notice. Oral Hearing Tran. at 1:18:00–36.

[16] If Bryant seeks to be "regarded as" disabled until 42 U.S.C. § 12102(1)(C), he runs afoul of another requirement. Section 12102(1)(C) does not apply to municipalities. *See* 42 U.S.C. § 12201(h) ("[A] public entity . . . need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section."). And Bryant only brings this claim against City of Berkeley. Dkt. 43 ¶¶ 51–54.

### VII.    State Law Claims

Having granted summary judgment as to Bryant's federal causes of action, the Court declines to assert supplemental jurisdiction over the remaining state law claims.

"A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized in Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 40 (2025).

The Court declines to assert supplemental jurisdiction, finding, after considering judicial economy, convenience, fairness, and comity, the balance of the factors weighs toward dismissing without prejudice the remaining state law claims. The Court now does so.

### VIII.    Conclusion

Plaintiff Vincent Bryant was shot in the face following an encounter with Berkeley police officers. This is a deeply unfortunate outcome. The Court's "task, however, is not to serve as a police oversight board or to second-guess officers' real-time decisions from the standpoint of perfect hindsight, but to ask whether the officers violated clearly established law." *O'Doan*, 991 F.3d at 1036. In this case, they did not. Defendants are entitled to qualified immunity on Bryant's Fourth Amendment and supervisory liability claims. As such, Defendants' motion for summary judgment is granted as to Bryant's Fourth Amendment and

supervisory liability claims.

Bryant has failed to establish the basis for his Title II claim under the ADA, and Defendants are thus entitled to summary judgment on this claim, too.

The Court declines to exert supplemental jurisdiction over Bryant's state law claims and dismisses those claims without prejudice.

This order dispenses with dkt. 101.

**IT IS SO ORDERED.**

Dated: September 12, 2025

_____
Alex G. Tse
United States Magistrate Judge